# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER EDDINGS, et al.,** | : | **CASE NO. 1:02-cv-0177** |
| | : | **(J. Beckwith, Magistrate Judge Sherman)** |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **VILLAGE OF WOODLAWN POLICE,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, VILLAGE OF WOODLAWN POLICE, AND DETECTIVE JAMES OHL

---

Come now Defendants Village of Woodlawn Police and Detective James Ohl and move this Court for summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. This motion is based upon the depositions of Raymond Hughes and Corey Mayberry, the Affidavit of Defendant James Ohl, the certified transcript of proceedings on December 6, 2001 in the Court of Common Pleas, Juvenile Division, Hamilton County, Ohio, In Re: Raymond Dishaun Hughes and Corey Mayberry, Case No. 01-07835, et seq., the pleadings filed herein, applicable law, and the Memorandum attached hereto, all of which demonstrate there is no genuine issue as to any material fact and these moving Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

 s/Lawrence E. Barbiere
Lawrence E. Barbiere (#0027106)
Attorney for Defendants, Village of Woodlawn Police,
Detective James Ohl
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
11935 Mason Road, Suite 110
Cincinnati, OH  45249
(515)583-4200
(513)583-4203
lbarbiere@schroederlaw.com

## MEMORANDUM

## I.    INTRODUCTION

On March 13, 2002, this suit was filed on behalf of minors, Raymond Hughes and Corey Mayberry against these Defendants, Village of Woodlawn Police and Detective James Ohl, as well as Defendants Skyline Chili and Dennis Brunsman on behalf of his minor child, Katherine Brunsman, alleging constitutional claims under 42 U.S.C. § 1983 and 1985, including equal protection claims, civil rights claims, and a state law claim of malicious prosecution.

Raymond Hughes was convicted of gross sexual imposition for an incident which occurred on or around September 23, 2001 at his place of employment Skyline Chili in Woodlawn. The incident from which that conviction arose involved Hughes reaching his hands under the blouse of Defendant minor child, Katherine Brunsman and grabbing her breasts. On October 28, 2001, a second incident occurred at the same Skyline Chili involving the same minor child, Katherine Brunsman, resulting in charges of rape and abduction. It was charged that Hughes raped Brunsman by sticking his fingers in her vagina and forcing her to perform oral sex upon him in the restaurant cooler. At the same trial at which he was convicted of gross sexual imposition, Hughes was acquitted of the rape and abduction charges. Mayberry was charged with complicity in rape, abduction and gross sexual imposition. He was tried and acquitted of the charges.

All claims against the Village of Woodlawn Police are subject to dismissal since it is not an entity capable of being sued. In addition, Plaintiffs have failed to make a showing sufficient to establish the existence of the elements necessary to establish their equal protection and civil rights claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Plaintiffs have failed to make a showing sufficient to establish the state law malicious prosecution claim. Additionally, Defendant Ohl is

entitled to judgment as a matter of law on the basis of qualified immunity as to federal claims, and Defendants are entitled to statutory immunity under R.C. 2744.03 as to the state law malicious prosecution claim. And, if the Court grants summary judgment on the federal claims, the state law claim should be dismissed for lack of jurisdiction. Therefore, Defendants are entitled to summary judgment.

## II.        STATEMENT OF FACTS

Raymond Hughes, Corey Mayberry, and Katie Brunsman were all employees of Skyline Chili and were all minor children at the time of the events involved herein. The matter first came to Detective Ohl's attention on November 6, 2001 when he received a phone call from Gina McConnell a counselor with Concerned Counseling. She advised Ohl that a client of hers, who turned out to be Brunsman, made an allegation as to sexual misconduct which McConnell thought should be investigated. (Tp. 124-125)[1]. Ohl interviewed Brunsman at the Woodlawn Police Department. Ohl observed the interview conducted by a forensic interviewer at Children's Hospital. (Tp. 125-126). Ohl also interviewed numerous other people with possible information including Skyline employee Lindsay Teuschler, Manager Justin Toran, Skyline General Manager Beverly Sizelove, and the Skyline owner. (Tp. 126-127). Ohl obtained a written statement from Brunsman at the Woodlawn Police Department. (Tp. 156; Ohl Exh. 1). Brunsman's statement makes it clear that she did not consent to the sexual activity which took place in the cooler. It includes the following statements:

> I remember Ray trying to convince me to suck his dick or possibly "fuck" him but I'm not sure if he wanted me to fuck him or just suck his dick. I just remember that he and Corey kept telling me I should. I kept saying no and they would ask why and I'd be like giving them every excuse I could think of. (Ohl Aff. ¶ 4, Exh. 1, p. 2-3)

---

[1]References to the certified transcript in In Re: Raymond Dishaun Hughes and Corey Mayberry, Case No. 01-07835 will be designated "Tp. ____ ".

. . .

Then Ray kind of pushed me (holding me and leading me to a spot by the coat racks next to the walk in.  He tried kissing on my neck and I just shrugged him off me.  Then he forced me to go into the cheese room[2] and I was like let me out it's cold. . . . Repeatedly I told him to let me out but then he shut the door and Corey held it shut and tuned off the lights.  I was scared, cold and in the dark all alone with Ray.  He kept pulling down my pants but I managed to pull them back up.  He tried to finger me but I was like stop stop and got his hand away.  He pulled down my pants and lifted me up.  I was so scared b/c I thought he was going to stick his dick in me.  I was like, do not do this; I'm not going to do this with you.  I didn't want to lose my virginity to him.  Let alone in a cheese room.  (Ohl Aff. ¶ 4, Exh. 1, p. 3-4).

. . .

He just kind of nudged me to the ground and insisted that I suck his dick.  I could tell he was getting angry and I knew that if I didn't do it he wouldn't stop trying to force me.  I had to get it over with so I opened my mouth.  He took my head and pushed it in and out on his dick in a front and back motion. . . .  It was hard to breath and I kept gagging but he didn't seem to care. . . .  All of a sudden, I threw up everywhere all over my pants and the ground. . . . (Ohl Aff. ¶ 4, Exh. 1, p. 4).

In the course of his investigation, Ohl also reviewed a summary of an interview taken by a social worker of Mayerson Center for Safe and Healthy Children with Brunsman on November 7, 2001.  (Ohl Aff. ¶ 4, Exh. 2).  The written statement of the interviewer confirms that Brunsman was forced into the cooler by Hughes; that he digitally fingered her vagina and made her touch his penis; and that he forced his penis into her mouth.  It further confirmed that Brunsman told Hughes no and tried to get him to stop but that she was unable to do so and was fearful of him.  (Ohl Aff. Exh. 2).

Hughes claims that on October 28, 2001 Brunsman approached him about the idea of performing oral sex with him.  (Hughes dep. 26, 36-37).  Hughes agreed and suggested the cooler in the back of the restaurant for the location.  (Hughes dep. 39).  Although there are differing accounts of the details, Hughes, Brunsman and Mayberry all ended up in the cooler.  (Hughes dep.

---

[2]The cheese room is another term for the cooler.

38, 48; Mayberry dep. 43).  Hughes testified that he told Mayberry he was going back to the cooler

to have oral sex with Brunsman.  (Hughes dep. 42-44).  Mayberry showed him how to cut off the fan

in the cooler to improve the temperature.  (Hughes dep.  44).  Once they were all in the cooler and

Hughes asked her "to do it," Brunsman said she would not perform oral sex as long as Mayberry was

present and Mayberry said, "I'll leave."  (Hughes dep. 49).

Mayberry allowed Ohl to meet with him at the Detention Center and voluntarily gave him

a statement.  (Mayberry dep. 64; Tp. 134-135; 140).  Ohl took notes during the interview.  (Ohl Aff.

¶ 4).  Detective Ohl did not speak with Hughes because Hughes' attorney refused to allow such an

interview.  (Tp. 147-148).  Ohl also arranged Brunsman's interview with the forensic interview at

Children's Hospital which he observed.  (Tp. 125-126; 155).

At the juvenile trial, Detective Ohl testified that Mayberry told him the following with

respect to the incident:

> A.    And, he [Mayberry] said Ray opened the door.  He was pulling Katie in and
> he was directly behind Katie.  At that point, I asked him if he was pushing
> Katie into the room and he said, no.  He says, but what he was directly behind
> her and he said that she was trying to pull away from, um, Ray.  When she
> was trying to pull away, her hand actually did get away at one point and her
> elbow hit Corey and he can understand how she, and this is his words, he can
> understand how she thought that he was pushing her because he was directly
> behind her and her arm went right into his gut area.
>
> Q.    What else did he tell you?
>
> A.    He told me that they were inside the walk in, all three of them were.  And,
> um, Ray was kind of giving her kinda, giving Katie a bear hug, and was
> actually pulling on her shirt.  And, at one point, Katie says, what are you guys
> trying to do, rape me.  Corey told me that he put his hands up in the air and
> he said I'm out of here.  And, he went to the door.  He shut the door.  He said
> he slammed the door and turned off the lights.  He then started flickering the
> lights and he was holding the door for approximately 30 seconds.  I asked
> him if he could hear anything or know of anything that was going on inside,
> even though he was outside, if there was any windows, anything like that.  He

said there wasn't any windows. But he felt a couple of thumps on the door. I asked him what that was. And he says she may have been trying to get out, he didn't know. Um, at that point, he said that after he felt the thumps on the door, he went into the dining area to sit at the counter and start watching football.

Q.    Did he ever, um, indicate that Katie consented to anything?

A.    No. He told me that he only had a feeling that he knew what was going on inside, but he didn't know what was going on inside for sure. (Tp.140, l. 12 – 141, l. 3).

Ohl indicated that he had several conversations with Brunsman about the incident in trying to get at the facts as he also discussed the incident with other potential witnesses. (Tp. 167-169). She also described to him the events resulting in the gross sexual imposition charge. (Tp.171). Ohl testified that he found witnesses who verified her statement regarding Hughes engaging in physical conduct that she did not consent to. (Tp. 171, l. 15-19).

Mayberry was arrested by two Woodlawn police officers, neither of whom was Detective Ohl. (Mayberry dep. 61). The officers who arrested him were polite, professional, did not push him around, and did not raise their voice to him. (Mayberry dep. 62-63). Mayberry has no reason to believe that those officers felt any personal malice or ill will toward him. (Mayberry dep. 63). Ohl was polite and professional to Mayberry at the Detention Center. (Mayberry dep. 64). Mayberry has no reason to believe that Ohl felt any personal malice or ill will toward him. (Mayberry dep. 64). Mayberry testified that his interview with Ohl at the Detention Center took about 10-15 minutes. (Mayberry dep. 136). He testified that he could not remember if Ohl wrote down what he was saying but that he did sign his Miranda rights. Mayberry first claimed that he could not remember Detective Ohl's testimony at trial but further testified in his deposition as follows:

Q.    As you sit here today, do you recall anything that Detective Ohl said in his testimony that you thought was untruthful?

A.      For something that I can remember – no, not that I can remember.

Q.      So, if – I just want to make sure I understand your answer.

A.      The things that he said – for the things that he said that I remember when he said it, everything was truthful.  (Mayberry dep. 138, l. 14-23).

Hughes' lawyer advised the Woodlawn Police that they were not to question him, and he would turn himself in.  (Hughes dep. 64).   The only time Hughes met with Officer Ohl was at the Detention Center when Ohl accompanied the person taking a blood test.  (Hughes dep. 65).  He previously had contact with Detective Ohl on an unrelated matter which did not result in an arrest. (Hughes dep. 15-16).  Hughes has had no other contact with any police officer from the Village of Woodlawn.  (Hughes dep. 16).

When Detective Ohl met with him at the time of the blood test, he was treated professionally at all times.  (Hughes dep. 60).  There was no discussion between Hughes and Ohl as to the charges brought against Hughes in this matter.  He had no other contact with Detective Ohl.  (Hughes dep. 17).  Hughes also testified that he could not recall anything specific that Detective Ohl testified in court that was not true.  (Hughes dep. 66-67).  He had no contact with Ohl or any police officer of the Village of Woodlawn after Detective Ohl came to the Detention Center.  (Hughes dep. 132).  He agreed that no Village of Woodlawn police officer has any personal malice or ill will toward him. (Hughes dep. 132-133).

## III.    ARGUMENT

### A.    DEFENDANT VILLAGE OF WOODLAWN POLICE IS NOT AN ENTITY CAPABLE OF BEING SUED.

In order to survive a motion to dismiss for failure to state a claim upon which relief may be granted, a Plaintiff must demonstrate that the named party has a legal capacity to be sued.  That is,

the party must be *sui juris*.  **Cuyahoga Falls v. Robart, 58 Ohio St.3d 1 (1991).  In Richardson v. Grady, 2000 WL 1847588 (Ohio App. 9th Dist.)** (copy attached), the court held that the City of Cleveland Police Department was not *sui juris* since it was a department of the City of Cleveland and was not an entity capable of being sued.  There is no evidence that the City of Woodlawn Police is other than a department of the Village of Woodlawn.  Therefore, it does not have the legal capacity to be sued and should be dismissed from this case.

Even assuming the Plaintiffs had sued the Village of Woodlawn instead of the Village of Woodlawn Police, these Defendants are entitled to summary judgment.  Plaintiffs have not proved that any Village of Woodlawn police officer violated their constitutional rights.  On the contrary, the undisputed evidence supports a finding that Detective Ohl acted with probable cause and that no Village of Woodlawn police officer violated any of Plaintiffs' constitutional rights.  Further, the Village of Woodlawn cannot be liable pursuant to the doctrine of *respondeat superior*.  **Monell v. Dept. of Social Services, 436 U.S. 658 (1978).**  Since no actions of the Village of Woodlawn were the driving or motivating force for any constitutional violation, the Village of Woodlawn is entitled to summary judgment in its favor even if the Court finds it was properly sued.  **Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997)**.

**B.    DETECTIVE OHL IS ENTITLED TO SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY.**

It is undisputed that Detective Ohl was acting within the scope of his discretionary duties as a law enforcement officer as to all of the actions which are the subject of this litigation.  It is well established that:

> . . . government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct, does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.

**Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Anderson v. Creighton, 483 U.S. 635, 639 (1987).**  Thus, for government officials, "qualified immunity represents the norm." **Harlow, supra, 457 U.S. at 807, 102 S.Ct. at 2732.**

In analyzing the qualified immunity defense, this Court must first determine whether Plaintiffs have shown a violation of a constitutionally or statutorily protected right and second, whether the right was so "clearly established" that a "reasonable official would understand that what he is doing violates that right." **Brennan v. Township of Northville, 78 F.3d 1152, 1154 (6th Cir. 1996)**, citing **Anderson v. Creighton, 483 U.S. 635, 640, (1987)**; and **Megenity v. Stenger, 27 F.3d 1120, 1124 (6th Cir. 1994)**.  Once qualified immunity is properly asserted, the burden shifts to the plaintiff to present the court with specific facts demonstrating a violation of clearly established law. **Mitchell v. Forsyth, 472 U.S. 511 at 526.**  In order to avoid the defense of qualified immunity, the right to have been violated:

> . . . must have been "clearly established" in a more particularized, and hence more relevant sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

> This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, [citation omitted], but it is to say that **in light of pre-existing law the unlawfulness must be apparent**. [citations omitted; emphasis added].  **Anderson v. Creighton, supra, 483 U.S. at 640, 107 S.Ct. at 3039.**

As noted by the Sixth Circuit in **Rich v. City of Mayfield Heights, 955 F.2d 1092 (6th Cir. 1992):**

> The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity. [Citation omitted] Defendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question.  Thereafter, the burden

shifts to the plaintiff to establish that the defendants' conduct violated rights so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct.

**Rich v. City of Mayfield Heights, 955 F. 2d at 1095.**

          **(i)      Plaintiffs' § 1983 Equal Protection Claim.**

As discussed below, Plaintiffs have not produced evidence sufficient to show a violation of a constitutional or statutorily protected right with respect to their § 1983 equal protection claim. Plaintiffs have not presented evidence sufficient to prove the conduct of Detective Ohl discriminated against them based upon race. **Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977); Henry v. Metro Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990).**

Further, Plaintiffs cannot produce any evidence that the actions of Detective Ohl in the course of his investigation or in filing a complaint violated clearly established law of which a reasonable official in his position would have been on notice. There is no evidence that Ohl understood that his conduct "violated rights so clearly established that any official" in his position would have clearly understood "that he was under a duty to refrain from such conduct." **City of Mayfield Heights, 955 F. 2d at 1095.** To the contrary, well established law at the time of Detective Ohl's conduct complained of herein was that government officials retain broad discretion as to whom to prosecute. **Gardenhire v. Schubert, 205 F.3d 303, 319 (6th Cir. 2000).** It was reasonable for him to consider his conduct lawful. Under **Gardenhire**, a § 1983 equal protection claim required the plaintiff to show that the prosecution refrained from prosecuting persons not belonging to Plaintiffs' identifiable protected class in similar situations, and that the prosecution was initiated with a discriminatory purpose. There is no such evidence herein. Further, there is no clearly established law requiring that the government refrain from prosecuting a member of a protected class merely because the alleged

victim belonged to a different class.  Accordingly, Defendant is entitled to summary judgment based upon qualified immunity as to the § 1983 equal protection claim.

### (ii)    Plaintiffs' § 1985(3) Equal Protection Claim.

For similar reasons, Detective Ohl is entitled to summary judgment based on qualified immunity on Plaintiffs' claim under 42 U.S.C. § 1985(3) alleging conspiracy to deny equal protection.  In order to prove such a claim, Plaintiffs must present evidence sufficient to establish a conspiracy; a conspiratorial purpose to deprive a person or class of persons of the equal protection of the law; an overt act in furtherance of the conspiracy; and an injury to person or property or deprivation of a constitutionally protected right.  **Griffin v. Breckenridge, 403 U.S. 88, 101 (1971).**  In **Griffin**, the Supreme Court also made it clear that a plaintiff may only recover under § 1985(3) where the conspiratorial conduct complained of is propelled by some racial or otherwise class based invidious discrimination.  Plaintiffs simply have failed to present evidence sufficient to establish the required elements for a § 1985(3) claim as set forth above.  Therefore, Plaintiffs have failed to show either the violation of a constitutionally or statutorily protected right or that the right was so clearly established that Detective Ohl would have understood that what he did in the course of his investigation and filing a complaint violated that right.

### (iii)    Plaintiffs' Claim Under 42 U.S.C. § 1985(2).

Plaintiffs also assert a civil rights claim under 42 U.S.C. § 1985(2), which essentially involves a claim for obstruction of justice.  Plaintiffs allege Detective Ohl was involved in a conspiracy to deny them their Fourteenth Amendment rights to equal protection and their constitutional rights to present a meaningful defense in their juvenile court proceeding.  The essential elements of the § 1985(2) claim of witness intimidation require (1) a conspiracy between two or

more persons, (2) deterring the witness by force, intimidation or threat from attending court or freely testifying at any pending matter, and (3) an injury to the plaintiff. **Kush v. Rutledge, 460 U.S. 719 (1983); Chahal v. Paine Webber, Inc., 725 F.2d 20, 23 (2nd Cir. 1983).** Plaintiffs allege an agreement existed among the Defendants that the Skyline employees would not discuss their knowledge of the case with anyone. Proof of the alleged conspiracy is an essential element of the § 1985(2) claim. Plaintiffs must show, through specific facts, the conspiracy of Defendant Ohl to violate Plaintiffs' federally created rights. They must show that witnesses were deterred from testifying. Plaintiffs have failed to present such evidence. Therefore, they have failed to establish the first element necessary to overcome the qualified immunity defense.

### (iv) Detective Ohl had probable cause.

Plaintiffs' Complaint does not contain a claim pursuant to 42 U.S.C. § 1983 for a violation of the Fourth Amendment. Even if such a claim had been made, Defendants would have been entitled to summary judgment. Detective Ohl acted with probable and reasonable cause and therefore committed no constitutional violation.

Detective Ohl conducted a thorough investigation and the undisputed evidence reveals that based upon the statements of the witnesses who were willing to speak with him, probable cause existed to prosecute both Raymond Hughes and Corey Mayberry. The fact that Raymond Hughes was convicted of one of the crimes with which he was charged is conclusive evidence of probable cause and his period of incarceration can be related directly to that conviction. The statements of Corey Mayberry and Katherine Brunsman both provided probable cause for the charges which were brought against Hughes and Mayberry. As a result, Detective Ohl and the Village of Woodlawn have committed no constitutional violation pursuant to either the Fourth, Fifth or Fourteenth

Amendment.

Further, Plaintiffs have failed to present evidence sufficient to show any conduct by Detective Ohl that he would have **known** violated a clearly established right.  Therefore, they have failed to present evidence sufficient to overcome the qualified immunity defense with respect to their claim under 42 U.S.C. § 1985(2).

### C.    DEFENDANTS ARE ENTITLED TO IMMUNITY PURSUANT TO OHIO REVISED CODE CHAPTER 2744.

Political subdivisions are shielded from civil liability as provided by R.C. Chapter 2744.  RC. 2744.02(A)(1) provides a broad immunity, subject to enumerated exceptions:

> For purposes of this Chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions.  Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Plaintiffs' claim is for malicious prosecution.  R.C. 2744.02(B) sets forth five exceptions to the immunity created in R.C. 2744.02(A)(1) for political subdivisions.  Although R.C. 2744.02 (B)(2) establishes an exception to immunity for injuries caused by the negligent acts of employees with respect to proprietary functions, there is no general exception for governmental functions.  Consequently, except as specifically provided in R.C. 2744.02(B)(1), (3), (4), and (5), with respect to governmental functions, political subdivision retain their cloak of immunity stemming from employees' negligent or reckless acts.  **Garrett v. Sandusky, 68 Ohio St.3d 139 (1994)**.

There are no exceptions to immunity for the intentional tort of malicious prosecution. **Smitek v. Peaco, 1993 WL 20995 (9th Dist. 1993)** (copy attached); **Armbruster v. W. Unity Police Dept., 127 Ohio App.3d 378 (1998)**.  Therefore, even if the Village of Woodlawn Police were an entity

capable of being sued, it is immune from liability with respect to Plaintiffs' state law malicious prosecution claim.

With respect to Detective Ohl, his immunity is established by R.C. 2744.03(A) which provides that:

> The employee is immune from liability unless one of the following applies: (a) his acts or omissions were manifestly outside the scope of his employment or official responsibility; (b) his acts or omissions were with malicious purpose and bad faith or in a wanton or reckless manner . . .

Thus, an employee of a political subdivision is overlaid with an additional layer of protection against civil liability – a shield – which must be pealed away before the official may be held liable on the substantive claim. **Mayes v. Columbus, 105 Ohio App.3d 728 (1995).**

_____In the instant case, it is undisputed that Detective Ohl acted within the scope of his responsibilities in investigating a report made by a counselor associated with Concerned Counseling Services that a client gave her information about a possible case of sexual abuse at Skyline Chili. Detective Ohl, who had nine years of experience as a criminal investigator, investigated the matter thoroughly including interviews with the alleged victim, Brunsman, with Mayberry, and with other employees and friends with possible knowledge. Thus, Detective Ohl responded to the report and investigated the matter in a reasonable manner.

Under R.C. 2744.03(A), Plaintiffs must present evidence that Detective Ohl acted with malicious purpose, in bad faith, or in a wanton manner. Plaintiffs have failed to present sufficient evidence to overcome the presumption of immunity set forth in R.C. 2744.03(A). In the context of R.C. 2744, malice refers to the willful and intentional design to do injury. **Piro v. Franklin Township, 102 Ohio App.3d 130, 139 (1995); Jackson v. Butler County Bd. of County Commissioners, 76 Ohio App. 3d 448 (1991)**. "Bad faith" connotes a "dishonest purpose, moral

obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." **Jackson v. Butler County Bd. of County Commissioners, supra**, **at 454.** Both Hughes and Mayberry have acknowledged that they were treated professionally by Detective Ohl and all of the Village of Woodlawn Police at all times. They have both acknowledged that they have no basis to believe that Detective Ohl or any officers of the Village of Woodlawn Police bore them any malice or ill will. Plaintiffs have presented no evidence of the requisite malice, bad faith or ill will sufficient to overcome the immunity set forth in Chapter 2744 of the Ohio Revised Code. Therefore, Detective Ohl and the Village of Woodlawn Police are entitled to summary judgment on Plaintiffs' state law claim of malicious prosecution.

   **D.    PLAINTIFFS HAVE NOT PRESENTED SUFFICIENT EVIDENCE TO SUSTAIN A CLAIM AGAINST DEFENDANTS FOR MALICIOUS PROSECUTION.**

   Suits for malicious prosecution are not favored by the courts because they act as a restraint upon the right to resort to the courts for lawful redress. **Woyczynski v. Wolf, 11 Ohio App.3d 226, 227 (1983), 464 N.E.2d 612, 614; Trussel v. General Motors Corp., 53 Ohio St.3d 142, 146, 559 (1990), N.E.2d 732, 736.** The elements of the tort of malicious prosecution are: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. **Trussel v. General Motors Corp., supra; and Criss v. Springfield Twp., 56 Ohio St.3d 82, 564 N.E. 2d 440 (1990).** The failure to satisfy any of the elements of a claim for malicious prosecution will result in a finding in favor of the defendants. **Delk v. Colonial Finance Co.,118 Ohio App. 451, 194 N.E. 2d 885 (1963).**

   Plaintiffs have failed to present evidence sufficient to establish **any** of the three elements of the tort of malicious prosecution. There is no evidence that Detective Ohl acted with the requisite

malice to support a claim for malicious prosecution.  In a malicious prosecution claim, malice has been defined as "an improper purpose, or any purpose other than a legitimate interest of bringing an offender to justice."  **Criss v. Springfield Township, 56 Ohio St.3d 82, 85 (1990); Garza v. Clarion Hotel, Inc., 119 Ohio App.3d 478 (1st Dist. 1997).**  Plaintiffs have conceded that Detective Ohl bore no malice or ill will against them.  There is no other evidence of malice or improper purpose in the course of his investigation of the rape and gross sexual imposition charges.  As a result, Plaintiffs cannot prevail on the claim for malicious prosecution for failure of proof of the first required element.

Similarly, Plaintiffs cannot succeed on the required element of proving lack of probable cause.  In **Darrah v. City of Oak Park, 255 F.3d 301 (6th Cir. 2001)**, the Court defined probable cause as follows:

> 'Probable cause to make arrests exists if the facts and circumstances within the arresting officer's knowledge' were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.' **255 F.3d at 312.**

In the instant case, Detective Ohl had the following information upon which he relied in determining that Plaintiffs had committed the charged offenses:  1)  The written statement of Katie Brunsman; 2)  Statements made by Brunsman to Ohl in numerous interviews; 3)  Brunsman's statements to the social worker interviewer with Children's Hospital observed by Ohl; 4)  The statements made by Plaintiff Mayberry to him in an interview admitting that he was behind Brunsman as Plaintiff Hughes pulled her into the cooler; that he could understand how Brunsman would have believed that he helped force her into the cooler; and that he held the door closed from some period of time even while Brunsman was knocking in an apparent attempt to get out.  Significantly, Mayberry does not contend that Detective Ohl lied in his court testimony in which Ohl testified with respect to the

substance of his interview with Mayberry as described in part above.  Although Hughes refused to speak with Ohl on the advice of his counsel, he also does not dispute any specific testimony of Ohl that he heard at the court proceeding.

Probable cause does not include a requirement that the defendant must have had evidence sufficient to insure a conviction.  **Epling v. Express Co., 55 Ohio App.2d 59 (1997)**.  Defendants submit that on the basis of the facts and circumstances which Detective Ohl learned in the course of his investigation he had probable cause to proceed with the arrest of Plaintiffs under **Darrah**. Therefore, Plaintiffs' malicious prosecution claim fails for failure to present evidence sufficient to prove the required element of lack of probable cause.

Finally, Plaintiff Hughes' malicious prosecution claim also fails for failure of the required element of termination of the prosecution in favor of the accused.  In addition to the charges of rape and abduction, which were dismissed after trial, Hughes was convicted of the charge of gross sexual imposition.  In **Ash v. Ash**, **72 Ohio St.3d 520, 522 (1995)**, the Court made it clear that the required element for malicious prosecution of termination in favor of the accused required a final disposition indicating that the accused was innocent.  Therefore, under **Ash** the required element for a malicious prosecution claim of favorable termination of all charges against Hughes is absent and such claim fails as to Hughes for the additional reason of failure to prove such element.

For all of the foregoing reasons, Plaintiffs have failed to present evidence sufficient to establish the elements necessary to succeed on a malicious prosecution claim.  Therefore, Defendants are entitled to a summary judgment with respect to such claim.

     **E.**    **PLAINTIFFS HAVE FAILED TO PRESENT EVIDENCE SUFFICIENT TO ESTABLISH THE FEDERAL CLAIMS.**

     **(i)**    **§ 1983 Equal Protection.**

In order to establish a violation of the Equal Protection Clause under § 1983, a plaintiff must prove that he has been purposely discriminated against due to his membership in a protected class. **Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977)**; **Henry v. Metro. Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990)**. In **Gardenhire v. Schubert, 205 F.3d 303, 319, (6th Cir. 2000)**, the Court noted that in our criminal justice system the government retains broad discretion as to whom to prosecute. In order to sustain a § 1983 claim for denial of equal protection based upon selective enforcement of the law, a plaintiff must satisfy a three part test as follows:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to. **205 F.3d at 319.**

Plaintiffs claim that Detective Ohl used the criminal proceedings with the motive of racially discriminating against Plaintiffs for engaging consensual sex acts with a white person. But Plaintiffs have not presented sufficient evidence to satisfy the three part test. Although Plaintiffs are African-Americans, they have failed to present evidence sufficient to satisfy the first element because:

> . . . It is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside her category were not prosecuted.

**Stemler v. City of Florence, 126 F.3d 856, 873 (6th Cir. 19997)**. There is no such evidence. On the contrary, the evidence supports a finding that Officer Ohl acted with probable cause. Relying upon **Stemler**, the Court in **Gardenhire**, further noted the strong presumption that state actors have properly discharged their official duties and that to overcome such presumption the Plaintiffs must present clear evidence to the contrary, with the standard a demanding one. **205 F.3d 319.** Based

upon their failure to present evidence sufficient to sustain such first element, Plaintiffs' equal protection claim must be denied.

Nor have Plaintiffs satisfied the second prong required for an equal protection claim of proving that the prosecution was initiated with a racially discriminatory purpose. To prevail on a § 1983 action for violations of equal protection, a person must show intentional discrimination because of membership in a particular class, not merely that he was treated unfairly as an individual. **Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir. 1986).** In order to prevail under the equal protection clause, it must be proven that the decision makers in the claimant's particular case acted with a discriminatory purpose. **U.S. v. Avery, 137 F.3d 343 (6th Cir. 1997)**; **McCleskey v. Kemp, 41 U.S. 279 (1987)**. No evidence has been presented of any malice or racially discriminatory purpose. As the Court said in **Gardenhire**, "[I]n light of the deference given to the discretionary decisions of law enforcement officers and the dearth of evidence to the contrary" Plaintiffs have failed to present evidence sufficient to sustain their § 1983 equal protection claim.

**(ii)    § 1985 Claims.**

It is well settled that in order to establish claims under 42 U.S.C. § 1985(2) or (3), a plaintiff must provide proof of class or race-based conspiracy. **Kush v. Rutledge, 460 U.S. 719 (1983); Haverstick Enterprises, Inc. v. Financial Federal Cerdit, Inc., 32 F.3d 9898, 993-994 (6th Cir. 1994); Barber v. Morgan, 898 F.2d 153 (6th Cir. 1990).** In their Fourth Cause of Action, Plaintiffs also assert an equal protection claim under 42 U.S.C. § 1985(3) for conspiring to deny Plaintiffs' equal protection rights. Plaintiffs have failed to present any evidence of a conspiracy; or of a conspiratorial purpose to deprive a person or class of persons of equal protection of the law based upon race; or of an overt act in furtherance of a conspiracy; or that the alleged conspiratorial conduct

was motivated by racial animus, all of which must be proven in order to state a claim under 42 U.S.C. § 1985 claim under **Griffin v. Breckenridge**, **403 U.S. 88, 102 (1971)**.

Similarly, Plaintiffs have failed to present evidence sufficient to sustain an obstruction of justice claim under 42 U.S.C. § 1985(2). There is no evidence of a race-based conspiracy between Defendants and any other persons to deter a witness from attending court or testifying both of which are essential elements for such a claim. **Barber v. Morgan, supra; Chahal v. Paine Webber, Inc., 725 F.2d 20, 23 (2nd Cir. 1983).** Further, there is no evidence that any employee of Skyline refused to provide information of testify. (Hughes dep. 119; Mayberry dep. 128, 132).

In summary, Plaintiffs have failed to present evidence sufficient to sustain a claim for equal protection under 42 U.S.C. § 1983 or conspiracy to deny equal protection or obstruction of justice under 42 U.S.C. § 1985. In addition, probable cause existed for the prosecution of Hughes and Mayberry. Therefore, Defendants are entitled to summary judgment with respect to all Federal claims of Plaintiffs.

### F.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Under **Woltsky v. Huhn, 960 F.2d 1331, 1338 (6th Cir. 1992)**, if the Court grants summary judgment with respect to Plaintiffs' federal law claims, their state law claims should also be dismissed for lack of jurisdiction.

### IV.    CONCLUSION

For all of the foregoing reasons, Defendants Village of Woodlawn Police and Detective James Ohl are entitle to summary judgment with respect to Plaintiffs' federal law claims and state law claims asserted herein.

Respectfully submitted,


 s/Lawrence E. Barbiere
Lawrence E. Barbiere (#0027106)
Attorney for Defendants, Village of Woodlawn Police,
Detective James Ohl
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
11935 Mason Road, Suite 110
Cincinnati, OH  45249
(513) 583-4200
(513( 583-4203 (fax)
lbarbiere@schroederlaw.com


## CERTIFICATE OF SERVICE

    I hereby certify that on January 30, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:


Kenneth L. Lawson, Esq.
Kenneth L. Lawson & Associates
808 Elm Street, Suite 100
Cincinnati, OH   45202
*Attorney for Plaintiffs*

Cynthia L. Gibson, Esq.
Katz, Teller, Brant & Hild
255 East Fifth Street, Suite 2400
Cincinnati, OH  45202-4724


Thomas F. Glassman, Esq.
Smith, Rolfes & Skavdahl
1014 Vine Street, Suite 2350
Cincinnati, OH  45202-1119
*Attorneys for Defendant, MRAVG, LLC*

Timothy B. Schenkel, Esq.
Freund, Freeze & Arnold
Fourth & Walnut Centre
105 East Fourth, Suite 1400
Cincinnati, OH  45202-4006
*Attorney for Defendants Brunsman*
*on behalf of minor child Katherine Brunsman*


 s/Lawrence E. Barbiere
Lawrence E. Barbiere


-21-