IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

04 APR 13 PM 4:51

FILED
JAMES BONINI
CLERK

| | |
|---|---|
| **JENNIFER EDDINGS, et al** : | Case No. C-1-02-0177 |
|  : | (Judge Beckwith) |
| **Plaintiffs,** : | (Magistrate Sherman) |
| **vs.** : | |
| **VILLAGE OF WOODLAWN** : | **PLAINTIFF'S JOINT MEMORANDUM** |
| **POLICE, et al** : | **IN OPPOSITION TO ALL OF THE** |
|  : | **DEFENDANT'S MOTIONS FOR** |
| **Defendants.** : | **SUMMARY JUDGMENT** |

Now comes Plaintiff, and hereby files this Memorandum in response to all of the Defendants Motions for Summary Judgment. This Memorandum in Opposition is supported by the Trial Transcripts, which have been filed separately herein, and Affidavits of Plaintiffs Jennifer Eddings, Raymond Hughes and Corey Mayberry also filed separately herein.

### MEMORANDUM OF LAW

**I.   Statement of Facts**

The facts from Plaintiffs Complaint are repeated here for purposes of this Memorandum

Plaintiff Hughes and Mayberry are African-American. Defendant Katie Brunsman is a white female.

Plaintiff Hughes, Plaintiff Mayberry and Defendant Katie Brunsman were employees at Defendant Skyline Chili Restaurant at all times relevant to this Complaint.

On or about October 28, 2001, Plaintiff Raymond Hughes and Defendant Katie Brunsman were employed at the Skyline Chili Restaurant in Woodlawn.

On or about October 28, 2001, Defendant Brunsman informed Plaintiffs that she wanted to perform oral sex on them during their shift at work.

The acting manager of Skyline Chili gave his permission to Plaintiffs and Defendant

Brunsman to perform sexual acts during their shift at work.

On or about October 28, 2001, Defendant Brunsman and Plaintiff Hughes performed a consensual sex act in the freezer of Skyline Chili.

On November 6, 2001 Detective Jim Ohl of the Woodlawn Police Department received a case for investigation involving Plaintiff Hughes and Plaintiff Mayberry.

Detective Ohl and Katie Brunsman knew that if Katie, who is a white female, alleged that she was raped by two black men that her story no matter how flimsy and unbelievable would in fact be believed.

Defendant Detective Ohl interviewed those employees present at Skyline Chili on the date of the October 28th incident.

Defendant Ohl interviewed the employees of Skyline Chili and was told factual details that contradicted the rape and abduction allegations of Defendant Brunsman.

Defendant Brunsman did not tell Defendant Ohl that Justin, the acting manager, walked into the freezer area observed both Plaintiff Hughes and Defendant Brunsman and exited.

Defendant Ohl revealed the witnesses' contradictory statements to Defendant Brunsman.

Defendant Brunsman, having been forewarned by Defendant Ohl of conflicting statements, adjusted her accounts of the facts in order to more conform to a credible story.

On information and belief, in an effort to bias the witnesses against Plaintiff Hughes, Defendant Ohl told witness Amanda Hollingsworth (a Skyline employee present on October 28th) that Plaintiff Jennifer Eddings told Detective Ohl "her son was so fine and good-looking and those girls were a bunch of whores, that he (Plaintiff Raymond Hughes) could have

screwed any of them."

The Rape charges were set for hearing on November 19, 2001. At that time, Defendant Brunsman suddenly remembered that she had been sexually groped by Plaintiffs on September 23, 2001.

Defendant Brunsman was interviewed by Defendant Ohl several times and never revealed this allegation to him.

On December 6, 2001 Plaintiffs began their criminal Trial before Magistrate Watkins on 2 counts of Rape and 1 count of Abduction and 1 count of Gross Sexual Imposition.

On December 14, 2001, after a full trial on the merits the Magistrate rendered her decision.

Magistrate Watkins dismissed the Rape and Abduction charges against Plaintiffs.

Magistrate Watkins adjudicated Plaintiff Hughes on the Gross Sexual Imposition while acquitting Plaintiff Mayberry on the Gross Sexual Imposition charge.

After hearing the testimony of the following witnesses: Katie Brunsman, Detective Ohl, Lindsay Teuschler, Amanda Hollingsworth, Jacqueline Kolowoski, Beth Manhart, Mr. Brunsman, Justin Toran and Joshua Girdler, the Magistrate found reasonable doubt as to the rape and abduction.

In the Magistrate's written decision, she stated, "Katie stated that Raymond pulled her and Corey Mayberry pushed her into the walk-in against her will, the Court based upon testimony of Amanda and Justin who indicated that Katie voluntarily went with Raymond finds that there is reasonable doubt as to any abduction. Additionally Justin opened the walk-in door and found Katie and Raymond fully clothed and standing and talking. Katie was actually positioned closer to the door and did not leave or indicate to Justin in any manner that

3

she was being restrained against her will.

The Magistrate found that Katie communicated consent to Raymond by voluntarily going with Raymond to the walk-in when he had announced to most of the employees and Katie that he was "going to get her to give him head", by remaining in the walk-in after Justin opened the door and she could have left, by remaining after vomiting during oral sex and then continuing with oral sex. Additionally, the Magistrate noted that Katie immediately after this event told both Amanda and Justin that she "had given head to Raymond and she had not been forced."

Katie acknowledged, at Trial, she did have a conversation with Joshua Girdler, a manager at Defendant Skyline Chili, about her wanting to be the "best cocksucker" and "head giver" but now indicates that she was just joking.

## II. Argument

### A. <u>Standard of Review</u>

Summary Judgment is available to a moving party who demonstrates that there is "no genuine issue as to any material fact and that the moving parties are entitled to summary judgment as a matter of law." (FRCP 56 (C). The burden is on the movant to establish conclusively no genuine factual dispute exist. <u>S. Smith v. Hudson,</u> 600 F. 2d. 6D (6th Cir.1979), Cert. Denied, 44 U.S. 986(1979). The evidence, together with all inference that can permissibly be drawn there from, should be read in the light most favorable to the party opposing the motion.

<u>Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The moving party may support the Motion for Summary Judgment with affidavits or other proof or by exposing the lack of evidence on

an issue, which the non-moving party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324(1986). For those issues for which the moving party will not have the burden of proof at trial, the movant must "point out to the district court" that there is an absence of evidence to support the non moving party's case. <u>Id</u> at 325. In responding to a summary judgment motion, the non-moving party may not rest upon the pleadings, but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported Motion for Summary Judgment." <u>Anderson v. Liberty Lobbying Inc.</u>, 477 U.S. 242, 257 (1986). The non-moving party must "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ.P.56 (e).

**B.     The Individual Defendants are not entitled to qualified immunity when a known Constitutional Right was unreasonably violated.**

**1.     Qualified Immunity Standard**

Defendants have raised the defense of Qualified Immunity. The qualified immunity defense operates as an affirmative defense protecting officials from liability and damages caused by their performance of discretionary functions (<u>Goad v Mitchell</u>, 297 F. 3rd 497, 500-501 (6 Cir. 2002). When qualified immunity is asserted, the District Court must conduct a 2-step inquiry: 1) the Court must first decide whether the Complaint alleges the violation of a Constitutionally protected right, 2) and if so, the Court must then consider whether the violation involved clearly established Constitutional rights of which a reasonable person would have known. <u>Hickman v Laskodi</u>, 2002 U. S. App. Lexis 18183, (quoting Ewolski v City of Brunswick, 287 F. 3d 492, 01 (6th Cir., 2002). The facts alleged taken in a light most favorable to Plaintiff, must demonstrate that the government official's conduct violated a Constitutional right, requiring the Court to evaluate whether the prosecution was racially

motivated and/or the arrest and seizure of Hughes and Mayberry constitutes a violation of the Fourth Amendment of the United States Constitution. (Saucier v Katz, 533 U. S. 194 (2001).

## MATERIAL FACTS IN DISPUTE AND ARGUMENT

Applying the law to the Statement of Facts as written above, it is apparent that Summary Judgment cannot be granted, as there is a material dispute as to the facts surrounding each Defendant in this case. It is apparent from a review of the transcripts from the Juvenile Adjudication Proceeding that Detective Ohl an employee of the Village of Woodlawn, knowing that Plaintiffs Mayberry and Hughes were known to be law abiding young men in the neighborhood should not have filed the charges. Particularly, after he learned that Defendant Katie Brunsman was repeatedly contradicted by the other witnesses regarding very important factual information in the case. (Trial Transcript Page 2 Lines 19-25) For instance, when Detective Ohl interviewed other employees of Skyline who were present on that date of the alleged rape he learned that Katie Brunsman had conversations with Amanda Hollingsworth immediately after leaving the freezer. (Trial Transcript Page 66 Lines 4-9) Katie admitted to Amanda that she engaged in voluntary sexual conduct with Raymond Hughes. (Trial Transcript Page 62 Lines 15-17) Defendant Katie Brunsman states in her Affidavit filed in support of her Motion for Summary Judgment that she did not bring the charges. A reasonable inference can be made that she did not because she knew the sexual act was consensual. However, when confronted with the possibility of having her parents being told along with perhaps the shame she may have felt, she claimed that Hughes raped her rather than telling the truth. According to Detective Ohl, he filed the charges because she was consistent in her story. (Trial Transcript page 17 line 25) and (Trial Transcript page 18 lines 1-12.)

>Detective Ohl states that...
>
>The experiences that I have had where people fabricate their story; they are not consistent with their story. They will either change some of the facts, which are some of the main facts of the story or the statement. Umh That's the biggest part of it. We fabricate...in my experience, when people fabricate their story, they are not consistent with their story. They will change some of the main facts that are pertinent and most important to what allegation would be toward anybody. In this particular instance, that did not occur.

However, Detective Ohl's subsequent testimony along with the other evidence in the case demonstrates that Katie Brunsman in her initial statement to the Police was not truthful but she lied. Rather than follow his rule of "consistency", Detective Ohl assisted Katie in this case by helping her overcome the inconsistencies; by making excuses for the lies she told.

Defendant Katie Brunsman never told Detective Ohl in her initial statement that she had made statements to various other people including Raymond Hughes that she wanted to perform oral sex on him. Katie never told Detective Ohl in her initial statement that after performing consensual oral sex on Raymond Hughes she freely disclosed doing so immediately thereafter to her friend Amanda Hollingsworth and to other employees. She never told Detective Ohl that just a day or so after this alleged incident she returned to the restaurant with her friend Lindsey and asked Raymond Hughes to attend a party with her and her friends.

These are not minor omissions, which otherwise tend to show that the encounter was consensual, not done by force and that she knowingly continued to "stick with the story" even though it was false. A reasonable inference can also be made that Detective Ohl viewed Raymond Hughes' conduct, although consensual, as disgusting, and in Detective Ohl's eyes

7

Raymond Hughes' consensual actions were "taboo". Yet just a couple of days after the alleged rape Katie came to Skyline with Lindsey and asked Raymond to come to a party with her. Raymond refused. Perhaps Katie felt used and rejected and this may be the reason that she falsely accused Raymond and Corey of rape. Whatever the reason the evidence shows that the allegations are false but because she is white and Raymond and Corey are black is all that was needed to permanently change the lives of Raymond and Corey.

The Affidavit of Ms. Jennifer Eddings points out that when she went to investigate her son's charge she was told by employees of Skyline that they were instructed that they could not talk to her or to Raymond Hughes' attorney regarding this case or they would be fired.

Ms. Edding's Affidavit also clearly contradicts the Affidavit of Josuha Girdler. Girdler claims that he was disciplined for allowing Defense Counsel into the office of Skyline Chili. Ms. Edding's Affidavit makes it clear that Mr. Girdler told her and Corey Mayberry that he was terminated for not only discussing the case with Mr. Lawson, but also for testifying as a Defense witness in this matter. A review of the trial transcript will also show that Ms. Amanda Hollingsworth a State witness, gave credible testimony to Mr. Hughes and Mr. Mayberry, even though as it was brought to the Court's attention by Defendant that she was being pressured to testify that Mr. Mayberry and Mr. Hughes had punched and hit Katie Brunsman. Although, she indicated that she had no knowledge of such activity ever occurring, she was urged to state that it could have happened.

In order to be fair to all parties, Counsel urges this Court to review the entire Trial Transcript to get a full understanding of not only what occurred but also why Mr. Hughes was wrongfully adjudicated for Gross Sexual Imposition and acquitted for the rape.

Regarding Detective Ohl and the Village of Woodlawn, the charge of Gross Sexual

Imposition was not introduced until the date of the bind-over, minutes after Defense Counsel communicated to the State that there would be no plea-bargain. The only witness testifying that this occurred was Ms. Brunsman, who by the Court's own Order on the Rape Acquittal, had given several different versions on material facts. Detective Ohl filed this charge anyway. None of Skyline employees interviewed by Ohl ever heard Katie mention an alleged incident of Raymond and Corey grabbing her breasts months before the alleged rape. According to the Affidavit of Raymond Hughes explains how he was held extensively in Juvenile Detention because he refused to admit that he committed the offense for which he was convicted and he refused to admit the rape for which he was acquitted. His jailors told him that in order for him to leave the juvenile facility, he would have to enter into a Sexual Offender Class and admit all of his conduct. Rather than quickly gain his freedom by admitting that he committed these acts, Mr. Hughes maintained his innocence and remained incarcerated for one year. He is a young man with no previous legal contact other than a traffic offense with the juvenile system. Further, by Detective Ohl's own admission, he had no previous contact with Raymond or Corey. (Trial Transcript page 167 Line 10) (B/O Page 66 Line 25)

It is obvious from reading the Trial Transcript that the managers and employees allowed all of the juveniles to engage in various sexual escapades while on duty. (Trial Transcript Page 152 Lines 12-17) This is not a case where the managers and those in charge and responsible for these juveniles did not know this activity was going on. Rather, the opposite is true. Not only did Justin Toran and Joshua Girdler know but they also never disciplined any employee for engaging in consensual sexual acts. They never discouraged sexual conversations between the juveniles and adults. In fact, in some cases they participated in these same conversations with the juveniles. For Defendant Skyline to claim that they had

no responsibility and no notice is absurd. Skyline could and should have been charged with Contributing to the Delinquency of Minors.

With respect to Defendants Mr. & Mrs. Brunsman, Katie parents. The Trial Transcript reveals that they hired their civil attorneys to sue Raymond, Corey, and Skyline prior to the closure of the Trial. Although Juvenile proceedings are closed to the public, the Juvenile Court Judge allowed the Civil Attorneys of Mr. & Mrs. Brunsman to attend the sentencing hearings of Raymond Hughes and request the transcript of same.

## RACE

Obviously an individual will not admit that he/she prosecuted an individual based on skin color or lied on an individual based on skin color. A reasonable inference based on the evidence, can be made by the trier of fact that even after Katie gave different versions of what happened, left out material information regarding her consent, Skyline advising its employees not to assist the Defendants in any way with the threat of punishment if they did, and Detective Ohl and Mr. Brunsman coaching Katie on how to testify, that the prosecution was based in part on race. A trier of fact can reasonably conclude that Corey Mayberry and Raymond Hughes were prosecuted based on race. Officer Ohl knew that Ms. Brunsman's story was not consistent. Ohl assisted her in attempting to make her story appear consistent. No other reason could exist for this malicious and racist prosecution other than the skin color of Mr. Mayberry and Mr. Hughes. There is a long history of African-American men being wrongfully and unlawfully prosecuted, persecuted and even killed based on the word of white females alleging rape. There is also a long history of white males such as Detective Ohl and Mr. Brunsman believing falsely that all black men desire white women, that all black men will rape white women because no self-respecting white woman would consent to sex with a black

man. These beliefs are so strongly held that many African-American parents advise their black male children against dating white girls. Raymond Hughes was convicted solely on Katie Brunsman's word even after it changed numerous times on material facts. Both Plaintiffs were acquitted of the rape. The Juvenile Court had no choice. Katie's words were contradicted by so many other employees who were present and with whom she had spoken that it was obvious she had consented to the sexual encounter with Raymond Hughes.

Thus, the Court convicted Raymond for Gross Sexual Imposition without any other supporting evidence. If the Trial Court believed Katie's word on the Gross Sexual Imposition beyond a reasonable doubt, (and all testimony was heard at the same time), then there should have been a subsequent conviction on the rape. In its decision, the Trial Court Judge stated that since she did not hear any contradictory evidence, then she was finding Raymond guilty. Counsel argued, but to no avail, that if the case involved her word against Raymond's, then Raymond was being punished for exercising his right not to take the stand to present contradictory evidence.

Joshua Girdler testified at the Trial that Katie Brunsman had discussed with him on numerous occasions that she carried "motion lotion" when she engaged in sexual activity with men and discussed with him how she enjoyed giving oral sex to men. Justin Toran testified that when Katie exited the freezer she indicated that she was firm and also indicated that the encounter was consensual. Ohl interviewed these people, yet he chose to prosecute these young men for rape anyway.

Defendant Katie Brunsman argued in her Motion for Summary Judgment that the elements for Malicious Prosecution were not met. This argument is disingenuous at best. When she was questioned by the Officer no charges could have been brought but for her false

11

testimony. In other words, Officer Ohl did not charge Plaintiffs Mayberry and Hughes with any crime after he talked to the counselor. He did bring charges after receiving the statement from Katie Brunsman. He then repeatedly worked with her to "fix" her material omissions from her initial statement. The issue has always been whether the sexual encounter was consensual. Officer Ohl's statements that the DNA supported the truth of Brunsman's initial statement are a red herring. No one in Skyline denied that there was a sexual encounter. However, there was evidence brought to Detective Ohl's attention as, mentioned above, that demonstrated (contrary to Katie Brunsman's initial statement) the encounter was in fact consensual. This begs the questions 1). Why did she lie? 2). Why did Detective Ohl ignore the lies and try to patch them up and assist Katie in fixing her story? Especially, when as Ohl states under oath, that his primary reason for bringing charges is a person's consistency in the story. (Trial Transcript page 17 lines 1-25, Trial Transcript page 18 lines 1- 25)

Defendant Skyline claims that the employees were never ordered not to talk to Defense Counsel. However, at the Trial Amanda Hollingsworth testified that "and, I mean, she[Beverly who is a manager at Skyline] just kept on reminding me not to tell anybody. And umh, she said the owner called up there and said not to tell anybody. They just kept on saying not to tell Josh; not to talk to anybody" (Transcript page 64 lines 18-22).

## CONCLUSION

All of these factors are material and are in dispute. All of these factual disputes are material on each of Plaintiffs causes of actions. Therefore, all of the Defendants Motions for Summary Judgment should be overruled.

Respectfully submitted,

_____
**Kenneth L. Lawson (0042468)**
**Kenneth L. Lawson & Associates**
**808n Elm Street, Suite 100**
**Cincinnati, Ohio 45202**
**(513) 345-5000**
**(513) 345-5005 Fax**

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was mailed to the following by regular U.S. mail this 13th day of April, 2004.

Lawrence E. Barbiere, Esq.  
11935 Mason Road, Suite 110  
Cincinnati, OH 45249

Cynthia L. Gibson, Esq.  
255 E. Fifth Street, Suite 2400  
Cincinnati, OH 45202-4724

Thomas F. Glassman, Esq.  
1014 Vine Street, Suite 2350  
Cincinnati, OH 45202-1119

_____
Kenneth L. Lawson

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER EDDINGS, et al** | : | Case No. C-1-02-0177 |
| | : | (Judge Beckwith) |
| Plaintiffs, | : | (Magistrate Sherman) |
| | : | |
| vs. | : | |
| | : | |
| **VILLAGE OF WOODLAWN** | : | **NOTICE OF MANUAL FILING OF** |
| **POLICE, et al** | : | **AFFIDAVITS OF JENNIFER EDDINGS,** |
| | : | **RAYMOND HUGHES, AND COREY** |
| **Defendants.** | : | **MAYBERRY** |

Notice is hereby given pursuant to the Federal Rules of Civil Procedure of the Manual Filing of the Affidavits of Jennifer Eddings, Raymond DeShawn Hughes and Corey Mayberry. These Affidavits are filed as part of the record herein and in support of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment.

Respectfully submitted,

/s/Kenneth L. Lawson (0042468)
Kenneth L. Lawson & Associates
The Dominion Building
808 Elm Street
Cincinnati, Ohio 45202
(513) 345-5000
(513) 345-5005 Fax
kenneth@kennethlawson.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was electronically filed with the Clerk of Courts using the CM/ECF system on this 13th day of April, which will notify Lawrence E. Barbiere, Esq. and Timothly B. Schenkel, Esq. and Thomas Glassman, Esq., via electronic email notification.

/s/ Kenneth L. Lawson