UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER EDDINGS, et al.,** | : | CASE NO. 1:02-cv-0177 |
| | : | (J. Beckwith, Magistrate Judge Sherman) |
| **Plaintiffs** | : | |
| | : | |
| vs. | : | |
| | : | |
| **VILLAGE OF WOODLAWN POLICE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**REPLY MEMORANDUM OF DEFENDANTS
VILLAGE OF WOODLAWN POLICE AND DETECTIVE JAMES OHL
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

**I.   INTRODUCTION**

Plaintiffs have failed to present to the Court in their Memorandum in Opposition any admissible evidence which could reasonably be interpreted by the Court as raising a genuine issue of material fact 1) with respect to any of the claims asserted against Defendants, Village of Woodlawn Police and Detective Ohl, or 2) with respect to Detective Ohl's entitlement to qualified immunity.  The affidavit of Raymond Hughes' mother, Jennifer Eddings, is almost entirely inadmissible hearsay.  The affidavit of Raymond Hughes consists of statements which serve solely to claim his innocence of a charge for which he was adjudicated a delinquent and incarcerated for approximately one year.  The affidavit is immaterial to any of the claims against the Village of Woodlawn Police or Detective Ohl.  The affidavit of Corey Mayberry is based primarily on hearsay; is immaterial to the claims asserted herein; and to a large extent is unintelligible and fails to raise any genuine issue of material fact.  Similarly, references by Plaintiffs to the trial transcript of the juvenile proceeding also fail to raise any factual issues which are material to the claims they have asserted

against the Village of Woodlawn Police and Detective Ohl.

Plaintiffs have failed to present any evidence in support of their claim against Detective Ohl that they were denied equal protection based upon racial discrimination. Rather, they have merely reasserted the unsupported allegations of the Complaint. In addition to the unsupported allegations of the Complaint, Plaintiffs have included in their brief unsupported statements which impute racial prejudice to Detective Ohl based solely upon Plaintiffs' stereotypical views of "white males" as expressed in their brief. (Doc. 51, Pltf.s' Memorandum, pp. 10-11). Plaintiffs have failed to present evidence of a Fourth Amendment violation. The undisputed evidence supports the conclusion that Detective Ohl acted with probable and reasonable cause. Plaintiffs have failed to present evidence sufficient to overcome the presumption of Detective Ohl's entitlement to summary judgment on the basis of qualified immunity with respect to the federal claims nor have they presented evidence sufficient to overcome Detective Ohl's entitlement to statutory immunity with respect to the state law malicious prosecution claim. The Village of Woodlawn Police is not an entity capable of being sued. Therefore, the Village of Woodlawn Police and Detective Ohl are entitled to summary judgment.

II.   **ARGUMENT**

    A.   **HEARSAY STATEMENTS IN THE AFFIDAVITS MAY NOT BE PROPERLY CONSIDERED BY THE COURT PURSUANT TO RULE 56(e).**

Since Detective Ohl has sustained the initial burden of showing that no genuine issues of material fact remain in dispute for trial, under *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), he is entitled to summary judgment unless Plaintiffs produce specific facts to show a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.,* 912 F.2d 151, 153-54 (6th Cir. 1990). To sustain this

burden, Plaintiffs cannot rest merely upon their pleadings. *Celotex*, 477 U.S. at 324. Rather, they must come forward with specific facts or admissible affidavits to support their claims and show a genuine material issue in dispute. *Celotex*, 477 U.S. at 324.

In support of their Memorandum in Opposition, Plaintiffs offer the affidavits of Jennifer Eddings, Raymond Hughes, and Corey Mayberry. (Doc. 49). These affidavits are replete with inadmissible hearsay which may not be considered under F.R.C.P. 56(e). Further, even if these affidavits were proper evidence, they would not be sufficient to create a genuine issue of material fact sufficient to defeat Defendants' entitlement to qualified and statutory immunity.

**(1)   The Eddings affidavit.**

Paragraphs one through three of the Eddings affidavit set forth hearsay statements unrelated to the issues in this case purported to have been made to Eddings by other individuals out of court. Paragraph four of the affidavit sets forth hearsay on hearsay: namely a purported statement made to her by a Skyline employee relating a statement purportedly made to the Skyline employee by Detective Ohl. Paragraph five is hearsay and paragraphs six through eight contain statements which are immaterial to the claims against Detective Ohl set forth in the Complaint.

**(2)   The Hughes affidavit.**

The Hughes affidavit sets forth statements which are both immaterial and hearsay. The recitations in the affidavit are immaterial since they primarily constitute statements by Hughes of his innocence of the gross sexual imposition charge for which he was adjudicated delinquent in court. Paragraphs three and four set forth hearsay statements made by out of court declarants with respect to the circumstances surrounding his adjudication as a delinquent.

### (3) The Mayberry affidavit.

Paragraphs one through five are immaterial. The affidavit is also replete with hearsay statements in paragraphs six and seven. The remainder of the affidavit is self-serving and is immaterial to the claims against Detective Ohl, with one exception.

The only "significance" of the Mayberry affidavit is what it inadvertently does. Specifically, it inadvertently makes it clear that there is no issue of fact with respect to Detective Ohl's determination of probable cause. The primary bases for probable cause were: 1) Ohl's interview with Katie Brunsman at the Woodlawn Police Department; 2) his observation of an interview of Brunsman conducted by a forensic interviewer at Children's Hospital (T.p. 125-126);[1] and 3) a written statement from Brunsman Ohl obtained at the Woodlawn Police Department. (T.p. 156; Ohl Exh. 1). Brunsman's statements to Ohl were clear that she did not consent to the sexual activity which took place in the cooler. (Ohl Affidavit ¶ 4, Exh. 1, pp. 2-4). Ohl's review of the summary of an interview taken by the social worker at Children's Hospital on November 7, 2001 confirmed Brunsman's statements to him that the sex was not consensual. (Ohl Affidavit ¶ 4, Exh. 2).

Ohl also relied on an interview with Corey Mayberry. At the juvenile trial, Ohl testified that Mayberry had confirmed certain key aspects of the non-consensual nature of the sex. (Doc. 44, Motion for Summary Judgment of Defendants, pp. 5-6). Ohl testified as follows:

> A. And, he [Mayberry] said Ray opened the door. He was pulling Katie in and he was directly behind Katie. At that point, I asked him if he was pushing Katie into the room and he said, no. He says, but what he was directly behind her and he said that she was trying to pull away from, um, Ray. When she was trying to pull away, her hand actually did get away at one point and her elbow hit Corey and he can understand how she, and this is his words, he can

---

[1] References to the certified transcript in *In Re: Raymond Dishaun Hughes and Corey Mayberry*, Case No. 01-07835 will be designated "T.p. ____".

        understand how she thought that he was pushing her because he was directly behind her and her arm went right into his gut area.

Q. What else did he tell you?

A. He told me that they were inside the walk in, all three of them were. And, um, Ray was kind of giving her kinda, giving Katie a bear hug, and was actually pulling on her shirt. And, at one point, Katie says, what are you guys trying to do, rape me. Corey told me that he put his hands up in the air and he said I'm out of here. And, he went to the door. He shut the door. He said he slammed the door and turned off the lights. He then started flickering the lights and he was holding the door for approximately 30 seconds. I asked him if he could hear anything or know of anything that was going on inside, even though he was outside, if there was any windows, anything like that. He said there wasn't any windows. But he felt a couple of thumps on the door. I asked him what that was. And he says she may have been trying to get out, he didn't know. Um, at that point, he said that after he felt the thumps on the door, he went into the dining area to sit at the counter and start watching football.

Q. Did he ever, um, indicate that Katie consented to anything?

A. No. He told me that he only had a feeling that he knew what was going on inside, but he didn't know what was going on inside for sure. (Tp.140, l. 12 – 141, l. 3).

In his deposition, Mayberry was asked if he could remember what Ohl testified to and if it was truthful. Mayberry first claimed in his deposition that he could not remember Detective Ohl's testimony at trial, but further testified in his deposition as follows:

Q. As you sit here today, do you recall anything that Detective Ohl said in his testimony that you thought was untruthful?

A. For something that I can remember – no, not that I can remember.

Q. So, if – I just want to make sure I understand your answer.

A. The things that he said – were the things that he said that I remember when he said it, everything was truthful. (Mayberry dep. p. 138, l. 14-23).

The Mayberry affidavit attempts to cloud Mayberry's deposition testimony and cast some doubt upon

Detective Ohl's juvenile court testimony about his interview with Mayberry. It does the opposite. In paragraphs ten and eleven of the affidavit, Mayberry states that he reviewed a copy of the trial transcript and Ohl's "entire testimony." Mayberry said that "such review refreshed my recollection." In paragraph twelve, he then states in his affidavit:

> I can now say, under oath that everything Officer Ohl testified to is not true although some of the things he did testify to were true.

The foregoing statement is on the one hand incomprehensible and on the other hand self-contradictory. But one incontestible fact arises from Mayberry's affidavit: namely, that despite having reread Ohl's trial transcript entire testimony, and having refreshed his recollection, **he is unable to specify a single statement of Detective Ohl relating the Ohl-Mayberry interview that is not true**. Therefore, based on Mayberry's deposition testimony and affidavit, Detective Ohl's juvenile court testimony as to his interview with Mayberry which corroborates Katie Brunsman's statements to him and to the social worker at Children's Hospital must be taken as uncontradicted and credible testimony.

### (4) Hearsay statements in the affidavits may not be considered under F.R.C.P. 56(e).

The Eddings, Hughes and Mayberry affidavits should not be considered by the Court under F.R.C.P. 56(e) because they are replete with hearsay which would be inadmissible at trial. It is well established that only admissible evidence may be considered by the Trial Court in ruling on a motion for summary judgment. *Wiley v. United States,* 20 F.3d 222, 226 (6th Cir. 1994). A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact. *Sperle v. Mich. Dept. of Corr.,* 297 F.3d 483, 495 (6th Cir. 2002). As described above, the Eddings, Hughes and Mayberry affidavits set forth evidence which is

primarily hearsay, and to the extent that the statements are not hearsay, they are immaterial to the issues of law before the Court in this case. The only exception is that the Mayberry affidavit confirms the truthfulness at Detective Ohl's juvenile trial testimony as to probable cause. Therefore, the hearsay statements in the affidavits may not properly be considered by the Court in ruling on Detective Ohl's Motion for Summary Judgment.

    **B.    PLAINTIFFS' MEMORANDUM IN OPPOSITION IMPROPERLY RELIES UPON INNUENDO, SPECULATION, AND UNSUPPORTED STATEMENTS WHICH DO NOT MEET THEIR BURDEN OF ESTABLISHING GENUINE ISSUES OF MATERIAL FACT.**

The "Statement of Facts" set forth in Plaintiffs' Memorandum fails to raise any genuine issues of material fact with respect to Plaintiffs' claims against Detective Ohl. The materiality of an issue of fact is evaluated based upon the relevant substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Plaintiffs may only avoid summary judgment on the merits of their claims, and on the application of qualified and statutory immunity, if they produce evidence under the substantive law which supports the merits of their claims and which overcomes the presumption of qualified immunity for the federal claims, and statutory immunity for the state claim. *Rich v. City of Mayfield Heights,* 955 F.2d at 1095. Plaintiffs fail to sustain such burden in their memorandum.

    Plaintiffs' Memorandum in Opposition is replete with statements which are either based upon the affidavits of Eddings, Hughes and Mayberry, which may not be considered; statements based upon nothing at all; and statements which are immaterial. For example, the Memorandum states on page 3 that Brunsman never told Detective Ohl in an interview that she had been sexually groped on September 23, 2001 which served as the basis for the sexual imposition charge and conviction. There is no evidence to support that statement in the brief. To the contrary, Detective Ohl testified at the juvenile trial that Brunsman did describe to him the events resulting in the gross imposition

charge and that he found other witnesses who verified her statement regarding Hughes engaging in physical conduct that she did not consent to. (T.p. 171). Further, the issue is immaterial since Hughes was adjudicated delinquent based upon such charge after a full trial.

Plaintiffs' demonstrate a complete lack of understanding of the substantive issues involved in this case by the statements in their Memorandum. For example, they state that a "reasonable inference" can be made that Katie Brunsman did not bring the charges against Hughes and Mayberry herself because "she knew the sexual act was consensual." But Plaintiffs' provide no **evidentiary** basis for that statement. Her oral statements to Detective Ohl and the social worker with Children's Hospital, her written statement, and the interview between Detective Ohl and Mayberry make it clear that Detective Ohl was advised consistently by Brunsman that she did not consent to the sex in the restaurant freezer.

Plaintiffs' statements that Hughes was a "good boy" and that Detective Ohl had no previous contact with either Hughes or Mayberry are simply immaterial to the legal issues before this Court. Assuming those things are true, it does not tend to prove that Detective Ohl committed constitutional violations on the basis of equal protection or lack of probable cause, or violations under 42 U.S.C. § 1985. Plaintiffs also state that "this is not a case where the managers and those in charge and responsible for these juveniles did not know this activity was going on." (Plaintiffs' Memorandum, p. 9). Is the Plaintiffs' point that non-consensual sex is okay if the manager knew consensual sex occurred on the premises from time to time?

Finally, Plaintiffs devote an entire section of their Memorandum under the heading "Race" without a scintilla of evidence to substantiate any of the actions of Detective Ohl were racially motivated. Plaintiffs state without any evidence that "a reasonable inference" can be made that

Detective Ohl viewed the conduct of Hughes "as disgusting" and "taboo" even though it was consensual. The only evidence which is material is that Detective Ohl, based upon his investigation, concluded that the conduct of Raymond Hughes was not consensual and that it constituted a violation of law. Further, with respect to the charge of gross sexual imposition, the juvenile court agreed with Detective Ohl, adjudicated Hughes a delinquent, and he remained incarcerated for one year.

Without any evidence, Plaintiffs state that "no other reason could exist for this malicious and racist prosecution other than the skin color of Mr. Mayberry and Mr. Hughes." (Pltf. Memorandum, p. 10). The only evidence is that the reason Mayberry and Hughes were prosecuted is that Detective Ohl conducted an investigation which consisted of taking an oral statement from Katie Brunsman; monitoring an interview by a social worker with Brunsman at Children's Hospital; reviewing a written statement from Katie Brunsman; conducting an interview with Corey Mayberry; and discussing the incident with several other witnesses, based upon all of which he concluded that there was probable cause to proceed with charges against Mssrs. Mayberry and Hughes. Plaintiffs' statements as to a "long history" of African-American men being wrongfully and unlawfully prosecuted on the basis of rape claims and a "long history of white males such as Detective Ohl" falsely believing that all black men desire white women is unsupported, unauthenticated, and should not be considered by this Court in ruling on the Motion for Summary Judgment. *Wiley, supra* at 226.

The unsupported and unauthenticated statements directed specifically to Detective Ohl attributing bias and prejudice to him without any evidence are scurrilous and should be disregarded by the Court also based upon the recent United States Supreme Court decision in *National Archives and Records Administration v. Favish,* 2004 WL 609605, 541 U.S. ____, 124 S.Ct. 1570 (2004)

(copy attached). In *Favish*, which was a Freedom of Information Act case, the Supreme Court directed much of its discussion to the deference which should be given to the conduct of government agents exercising their official duties in the absence of clear evidence of misconduct. In a statement particularly applicable to the instant case, the Court said:

> Allegations of government misconduct are "'easy to allege and hard to disprove'". . . so courts must insist on a meaningful evidentiary showing. 124 S.Ct. at 1582.

Plaintiffs herein have made unsupported, scurrilous allegations against Detective Ohl which do not provide a proper basis for denying summary judgment.

### (C) PLAINTIFFS HAVE NOT PRODUCED SUFFICIENT EVIDENCE TO OVERCOME THE PRESUMPTION IN FAVOR OF DETECTIVE OHL'S ENTITLEMENT TO QUALIFIED IMMUNITY.

In *Saucier v. Katz,* 533 U.S. 194 (2001), the Supreme Court held that in order to overcome the presumption of qualified immunity, the plaintiff must sustain his burden of proof based upon a two step inquiry. First, plaintiffs must present fact demonstrating that the defendant violated a constitutional right. Second, that constitutional right must be so clearly established that a reasonable official would understand that what he did violated that clearly established constitutional right. Plaintiffs' Memorandum in Opposition fails to present any evidence sufficient to sustain their burden of proof to defeat qualified immunity on any of the federal claims.

#### (i) Plaintiffs' equal protection claims.

As set forth in detail above, Plaintiffs fail to present a scintilla of evidence that any of the conduct of Detective Ohl in this proceeding was based upon Plaintiffs' race. Therefore, they have failed to present evidence sufficient to establish a § 1983 equal protection claim for prosecuting Plaintiffs because they belong to a protected class. They have also failed to produce a scintilla of evidence establishing a conspiratorial purpose to deprive Plaintiffs equal protection under the law

on the basis of their race. Therefore, they have failed to present evidence sufficient to establish a claim under 42 U.S.C. § 1985(3).

Since Plaintiffs have failed to present evidence of the violation of either the constitutional or statutorily protected right to equal protection, they have also failed to present evidence of a violation of a clearly established right by Detective Ohl that he would have understood to have been violated by his conduct. Therefore, Detective Ohl is entitled to qualified immunity with respect to the equal protection claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

        **(ii)**       **Plaintiffs' claim under 42 U.S.C. § 1985(2).**

In order to sustain this claim, Plaintiffs are required to produce evidence of an alleged conspiracy between Detective Ohl and some other person and that a witness was deterred from testifying by force, intimidation or threat. *Kush v. Rutledge,* 460 U.S. 719 (1983). Plaintiffs have not produced any admissible evidence in support of the existence of any such conspiracy. To the extent that Plaintiffs attempt to rely upon the affidavit of Jennifer Eddings, as set forth in detail above, that affidavit is inadmissible as hearsay and may not be considered by the Court. Further, Plaintiffs have failed to present any evidence that any witnesses were, in fact, deterred from testifying at the trial. Therefore, Plaintiffs have failed to establish even the first element necessary to overcome the qualified immunity defense with respect to their claim under 42 U.S.C. § 1985(2). And, they also have failed to prove conduct on the part of Detective Ohl that he should have known violated clearly established law.

        **(iii)**      **Plaintiffs' Fourth Amendment claim.**

Plaintiffs' claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment requires evidence that Detective Ohl acted without probable cause. *Crockett v. Cumberland College,* 316

F.3d 571 (6th Cir. 2003). Probable cause is assessed from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight. *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir. 2000). It requires only the determination of a probability of criminal activity, not a "prima facie showing." *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir. 1988). As discussed in detail above, Plaintiffs have simply failed to present evidence of the absence of probable cause. First, Raymond Hughes was convicted of one of the crimes with which he was charged which is conclusive evidence of probable cause. Second, the several statements of the victim Katherine Brunsman, as well as one of the Plaintiffs herein, Corey Mayberry, support the existence of probable cause for the charges that were brought against Hughes and Mayberry. Further, once an officer has probable cause based upon his investigation, he is under no duty to investigate further or to look for additional evidence which may exculpate the accused. *Crockett, supra,* at 581. The multiple statements of Brunsman, along with the interview between Ohl and Mayberry, provided Detective Ohl with probable cause. He was not obligated to investigate further. And, based upon the failure of Plaintiffs herein to present any evidence that Detective Ohl did not have reasonable cause to conclude as to the probability of criminal activity, 20/20 hindsight cannot be used to undermine his reasonable probable cause determination. Therefore, Plaintiffs have failed to present evidence of the violation of a constitutional right by Detective Ohl and have failed to establish the first element sufficient to overcome qualified immunity. Similarly, they have also failed to present evidence sufficient to show any conduct by Detective Ohl that he would have known violated a clearly established right. Therefore, Plaintiffs have failed to present evidence sufficient to overcome the qualified immunity defense with respect to their claim under 42 U.S.C. § 1985.

    **D.    PLAINTIFFS HAVE FAILED TO PRODUCE EVIDENCE SUFFICIENT TO OVERCOME DETECTIVE OHL'S ENTITLEMENT TO STATUTORY IMMUNITY UNDER CHAPTER 2744.**

Plaintiffs have also made a malicious prosecution claim against Detective Ohl. As set forth in Detective Ohl's Motion for Summary Judgment, he is entitled to statutory employee immunity pursuant to Ohio R.C. § 2744.03(A). Plaintiffs have failed to present any evidence which would provide a basis for denying immunity under the statute. Further, Plaintiffs do not even dispute Detective Ohl's entitlement to statutory immunity with respect to the state law claim in their Memorandum in Opposition, or address that issue in any way. Therefore, for all the reasons set forth on pages 13 through 15 of Detective Ohl's Motion for Summary Judgment, (Doc. 44), he reasserts his entitlement to summary judgment on the basis of statutory immunity under Chapter 2744 of the Ohio Revised Code.

    **E.    PLAINTIFFS HAVE NOT PRESENTED EVIDENCE SUFFICIENT TO OVERCOME DETECTIVE OHL'S ENTITLEMENT TO SUMMARY JUDGMENT ON THEIR STATE LAW CLAIM OF MALICIOUS PROSECUTION.**

The elements of the tort of malicious prosecution are: 1) malice in instituting or continuing the prosecution, 2) lack of probable cause, and 3) termination of the prosecution in favor of the accused. *Trussel v. General Motors Corp.,* 53 Ohio St.3d 142, 146 (1990). Plaintiffs have failed to present any evidence in their Memorandum in Opposition which would establish any of the elements of the tort of malicious prosecution as set forth above. Rather, Plaintiffs only make the statement that Katie Brunsman "lied" and Detective Ohl based his investigation on such lies. There is no evidence that Detective Ohl believed she was lying. Thus, Plaintiffs' unsupported statements do not constitute evidence of malice on the part of Detective Ohl; lack of probable cause; or

termination of the prosecution in favor of Plaintiff Hughes. For the sake of judicial economy, Detective Ohl incorporates by reference his discussion in pages 15 through 17 of his Motion for Summary Judgment (Doc. 44), supporting his entitlement to judgment for failure of Plaintiffs to present evidence sufficient to establish a malicious prosecution claim based upon the undisputed facts herein.

    **F.   NAMED DEFENDANT VILLAGE OF WOODLAWN POLICE IS ENTITLED TO SUMMARY JUDGMENT SINCE IT IS AN ENTITY NOT CAPABLE OF BEING SUED.**

Plaintiffs have failed to present any evidence or argument in opposition to the Motion for Summary Judgment of named Defendant Village of Woodlawn Police on the basis of its not being an entity capable of being sued. Detective Ohl incorporates by reference his argument on pages 7 and 8 of his Motion for Summary Judgment (Doc. 44) in support of his position.

**III.   CONCLUSION**

For all of the foregoing reasons, Defendants Village of Woodlawn Police and Detective James Ohl are entitled to summary judgment with respect to Plaintiffs' federal law claims and state law claims asserted herein.

    Respectfully submitted,

    s/Lawrence E. Barbiere
    Lawrence E. Barbiere (#0027106)
    Attorney for Defendants, Village of Woodlawn Police, Detective James Ohl
    **SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
    11935 Mason Road, Suite 110
    Cincinnati, OH  45249
    (513) 583-4200
    (513( 583-4203 (fax)
    lbarbiere@schroederlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on April 22, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kenneth L. Lawson, Esq.
Kenneth L. Lawson & Associates
808 Elm Street, Suite 100
Cincinnati, OH  45202
*Attorney for Plaintiffs*

Cynthia L. Gibson, Esq.
Katz, Teller, Brant & Hild
255 East Fifth Street, Suite 2400
Cincinnati, OH  45202-4724

Thomas F. Glassman, Esq.
Smith, Rolfes & Skavdahl
1014 Vine Street, Suite 2350
Cincinnati, OH  45202-1119
*Attorneys for Defendant, MRAVG, LLC*

Timothy B. Schenkel, Esq.
Freund, Freeze & Arnold
Fourth & Walnut Centre
105 East Fourth, Suite 1400
Cincinnati, OH  45202-4006
*Attorney for Defendants Brunsman
on behalf of minor child Katherine Brunsman*

Michael W. Hawkins, Esq.
Trina Walton, Esq.
Dinsmore & Shohl
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202

   s/Lawrence E. Barbiere
   Lawrence E. Barbiere