IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jennifer Eddings, et al.,         )
                                  )
            Plaintiffs,           ) Case No. 1:02-CV-177
                                  )
   vs.                            )
                                  )
Village of Woodlawn Police,       )
et al.,                           )
                                  )
            Defendants.           )

O R D E R

This matter is before the Court on motions for summary judgment filed by Defendant MRAVG, LLC's (Doc. No. 42),[1] Defendants Village of Woodlawn Police and Detective James Ohl (Doc. No. 44), and Defendant Katherine Brunsman (Doc. No. 47). For the reasons set forth below, each Defendant's motion is well-taken and is **GRANTED**.

I. Background

On December 14, 2001, a magistrate of the Hamilton County Juvenile Court adjudicated Plaintiff Jennifer Eddings' minor son Raymond Hughes delinquent on one count of gross sexual imposition.  The magistrate dismissed charges of rape and

---

[1] According to the pleadings, MRAVG, LLC does business as Woodlawn Skyline Chili.  For ease of reference, hereinafter the Court will simply refer to this defendant as "Skyline."

abduction against Hughes.  In the same proceedings, the magistrate dismissed charges of rape, abduction, and gross sexual imposition against Plaintiff Mary Mayberry's minor son, Corey Mayberry.

The charges against the two youths arose out of an October 28, 2001 incident in which the prosecution alleged that Hughes and Mayberry pushed Defendant Katherine Brunsman into a freezer at the Woodlawn Skyline Chili where Hughes then forced Brunsman to perform oral sex on him.  Hughes claimed then, and claims now, that the encounter with Brunsman was consensual. Plaintiffs essentially allege in their complaint that Detective James Ohl of the Woodlawn Police Department, and Brunsman falsely charged Hughes and Mayberry because they knew that Brunsman, who is white, would be believed if she alleged that she had been raped by two black men.  Plaintiffs further allege that all of the Defendants conspired together to prevent other Skyline Chili employees from coming forward with evidence favorable to the Plaintiffs and that one employee was in fact terminated for testifying for the Plaintiffs in the state court proceedings.

Plaintiffs filed a complaint which asserted state law claims for malicious prosecution against the Village of Woodlawn, Detective Ohl, and Brunsman.  The complaint also asserted a state law claim against Skyline for negligent hiring, retention, and supervision.  The complaint then asserted federal claims against

the Village of Woodlawn and Detective Ohl pursuant to 42 U.S.C. § 1983 for denial of equal protection.  Finally, the complaint asserted claims against each Defendant pursuant to 42 U.S.C. § 1985 for conspiracy to deny equal protection and/or obstruct justice.  On motion of Skyline, the Court dismissed Plaintiffs' claims for negligent hiring, retention, and supervision.

      Defendants now each move for summary judgment on Plaintiffs' remaining claims.  Skyline denies that it participated in a conspiracy to deny Plaintiffs' their right to equal protection.  Supported by the affidavit of Peter Pardikakis, the principal owner of the restaurant, Skyline states that it did not instruct its employees not to talk to anyone about the incident, only that they should refrain from doing so on company time or on the restaurant's premises.  Skyline admits firing manager Joshua Girdler, not because he spoke with Plaintiffs' counsel about the incident, but rather because he spoke with counsel on company time and allowed counsel unsupervised access to the manager's office.  Skyline also notes that Girdler was not terminated until after he testified in the state court proceedings.  See Pardikakis Aff. ¶¶ 2-7; Girdler Aff. ¶¶ 2-5.

      The Village of Woodlawn and Detective Ohl deny that the investigation into the alleged rape incident was instituted for discriminatory reasons.  According to Detective Ohl, the

investigation commenced because he received a call from a counselor from Concerned Counseling who informed him that one of her clients had made an allegation of sexual abuse. Ohl Aff. ¶ 3.[2] Detective Ohl attached to his affidavit Brunsman's statement, his own interview notes, and the interview notes taken by Brunsman's abuse counselor. These documents contain no hint that Detective Ohl bore any racial animus toward Plaintiffs. Defendants have also submitted excerpts from Plaintiffs' depositions in which they admit that they have no reason to believe that Detective Ohl or the police department bore any personal malice toward them. There is no indication in Plaintiffs' testimony that Detective Ohl mistreated them in any way. In fact, Mayberry admitted that Detective Ohl was polite and professional with him at all times. Mayberry Dep. at 63-65.

     Brunsman argues that she cannot be held liable for malicious prosecution because she did not initiate the police investigation and subsequent trial. Brunsman states that she only provided information to the investigating officer and testified at trial as requested. Thus, Brunsman argues that pursuant to Archer v. Cachat, 135 N.E.2d 404 (Ohio 1965), she is entitled to what amounts to immunity to liability for malicious

---

[2] Ohl did not identify the client, but the state court transcript indicates that the client in question was a high school classmate of Brunsman's. See Tr. (Dec. 6, 2001), at 71-72.

prosecution because the ultimate decision to go forward with the investigation and prosecution was in the sole discretion of the police and the prosecuting attorney.  Finally, Brunsman argues that there is simply no evidence in the record which indicates that she participated in any way in a conspiracy against the Plaintiffs.

In responding to Defendants' motions for summary judgment, Plaintiffs rely first on the statement of facts alleged in their complaint.  The allegations in the complaint, however, are insufficient as a matter of law to withstand Defendants' motions for summary judgment.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986).  Plaintiffs have also submitted their own affidavits in opposition to Defendants' motions.  As Defendants correctly point out, however, these affidavits are rife with hearsay statements.  For instance, Ms. Eddings avers that Skyline manager Beverly Sizemore told her that Pardikakis told Sizemore that she (Sizemore) was not allowed to speak with her or her son's attorney.  Eddings Aff. ¶ 3.  Ms. Eddings also states that another Skyline employee, Amanda Hollingsworth, told her (Eddings) that Detective Ohl tried to get her (Hollingsworth) to support Brunsman's version of the incident.  Ms. Eddings also avers that Hollingsworth told her (Eddings) that during the trial Brunsman and her victim advocates tried to get her (Hollingsworth) to change her testimony to support Brunsman's

5

allegations.  Hughes' affidavit contains statements which are not only hearsay but do not appear to have been made by any of the Defendants in this case.  For instance, Hughes states that while incarcerated at Hillcrest School for Juveniles, some unidentified person or persons told him that he would have to admit to raping Brunsman and receive sexual offender counseling before he would be released from incarceration.  Mayberry's affidavit also contains numerous hearsay statements.  Mayberry states that Girdler told him that he (Girdler) was fired after Skyline learned that he testified in support of Plaintiffs at trial.  Mayberry also states that several unidentified employees and managers of Skyline told him that Detective Ohl and the owner of Skyline devised the policy that any employee who spoke with Plaintiffs or their attorney about the case would terminated.  These hearsay statements are not evidence and may not by considered by a court when ruling on a motion for summary judgment.  Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994).

     The only remaining evidence submitted by Plaintiffs is the transcript of the juvenile court proceedings, which Plaintiffs have invited the Court to review.  Plaintiffs claim that the transcript shows that Brunsman made a number of inconsistent initial statements about the incident and that Detective Ohl assisted her in patching up her testimony.

Plaintiffs also point to testimony from trial witnesses which support their version of the events. Plaintiffs then launch into a wildly speculative and unsupported argument that because Detective Ohl is white, he must have held a stereotypical belief that all African-American men desire white women and that no self-respecting white women would consent to sexual contact with an African-American man. Thus, based on this theory, Plaintiffs apparently argue that Detective Ohl must have been motivated to investigate and prosecute them because of their race.

The motions are fully briefed and ready for disposition.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Id.</u>

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." <u>First National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert.</u>

dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

Summary judgment in Defendants' favor is clearly appropriate as to each of Plaintiffs' remaining claims. There is simply no admissible evidence in this record which shows that any of the Defendants acted with malice or racial animus toward the Plaintiffs.

First, the Court questions whether at this point Plaintiff Hughes has any cognizable federal claims. Plaintiffs' brief for the most part is simply an assertion that the state court magistrate's adjudication of delinquency on the gross sexual imposition charge was incorrect or not supported by the evidence adduced at trial. Hughes' federal claims are probably barred by the Rooker-Feldman doctrine, which prevents federal courts from engaging in what amounts to appellate review of state

court decisions,[3] or by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Court held that a § 1983 claim is not cognizable if a judgment in the plaintiff's favor would imply the invalidity of his state court conviction or sentence. Id. at 486-87. In such a case, in order to proceed with his claim, the plaintiff must show that his state court conviction was reversed on direct appeal, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. Id. at 487. Hughes' federal claims clearly imply that his state court adjudication was invalid because he alleges that the sexual contact with Brunsman was consensual, that his prosecution was motivated by racial animus, and his adjudication of delinquency secured by conspiracy.[4] Therefore, because Hughes has not shown that his state court adjudication has been reversed or expunged, etc., it appears that his federal constitutional claims are not cognizable.[5]

---

[3] See Pieper v. American Arb. Assoc., Inc., 336 F.3d 458, 460 (6th Cir. 2003).

[4] Heck also applies to conspiracy claims arising under 42 U.S.C. § 1985. See Paulus v. Light, No. 96-2355, 1997 WL 461498, at **1 (6th Cir. Aug. 12, 1997).

[5] The Court does note that state court juvenile proceedings are only quasi-criminal in nature. See In re Fisher, 313 N.E.2d 851, 855 (Ohio 1974). Nonetheless, juveniles in delinquency proceedings are entitled a wide array of constitutional protections normally reserved for adult criminal prosecutions. State v. Walls, 775 N.E.2d 829, 839-40 (Ohio 2002). Additionally, as the Court noted in Walls, although juvenile court proceedings are technically civil proceedings, they do vindicate the state's interest in enforcing criminal laws. Id. at 840. Therefore, the Court believes that the rationale of Heck would still apply when the underlying state

In any event, assuming for present purposes that Hughes' federal claims are cognizable, summary judgment in favor of Defendants is still warranted.

In order to establish an equal protection claim for selective prosecution, the plaintiff must establish three elements: 1) the state actor singled out a person belonging to an identifiable group for prosecution even though he has decided not to prosecute others not belonging to the group in similar situations; 2) the prosecution was initiated for a discriminatory purpose; and 3) the prosecution had a discriminatory effect on the group to which the defendant belongs.  Stemler v. City of Florence, 126 F.3d 856, 873 (6th Cir. 1997).  The plaintiff must make a prima facie showing that similarly situated persons outside his category were not prosecuted.  Id.  Moreover, there is a strong presumption that state actors have properly discharged their official duties; thus, the plaintiff must present clear evidence to the contrary in order to prevail on a selective prosecution claim.

Plaintiffs' evidence satisfies none of the above criteria.  There is no evidence that Detective Ohl or any officer of the Woodlawn police singled out Plaintiffs for prosecution while ignoring similar offenses committed by juveniles outside of Plaintiffs' class.  Plaintiffs' generalizations about white men's supposed attitudes toward interracial sexual relations aside,

---

court proceeding is an adjudication of juvenile delinquency.

there is not one iota of evidence that Detective Ohl bore any racial animus towards the Plaintiffs.  Indeed, Mayberry admitted that Detective Ohl treated him professionally and courteously at all times.  Finally, Plaintiffs have not adduced any evidence that their prosecution had any racially discriminatory effect on African-Americans as a group.  Plaintiffs' selective prosecution claims simply are not sustainable on this record.

        The record is similarly lacking in evidence supporting Plaintiffs' federal conspiracy claims.  In order to prevail on a conspiracy claim under § 1985(3), the plaintiff must establish: 1) a conspiracy involving two or more persons; 2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; 3) an act in furtherance of the conspiracy; and 4) injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  <u>Johnson v. Hills & Dales Gen. Hosp.</u>, 40 F.3d 837, 839 (6th Cir. 1994).  In addition, the plaintiff must adduce evidence that shows that the defendants conspired against him because of class-based animus, such as race.  <u>Id.</u>  In order to prevail on a claim under § 1985(2), the plaintiff must show 1) the existence of a conspiracy to use threat, force, or intimidation of a witness or party to obstruct justice in federal court or 2) class-based invidious discrimination.  <u>Ellison v. Lefler</u>, No. 93-2606, 1994 WL 276926, at **1 (6th Cir. June 21, 1994).

Plaintiffs' conspiracy claims fail because there is no admissible evidence of a conspiracy, and even if there was such evidence, there is no evidence that it was motivated by class-based animus. Questioning a witness about inconsistencies in her statements, without more, hardly rises to a conspiracy to obstruct justice or deprive the Plaintiffs of their civil rights. Skyline did fire Girdler, but after he testified at trial on Plaintiffs' behalf, and then only because he allowed improper access to the manager's office, not because of his testimony. There is no evidence of use of force, threats, or intimidation against a party or witness. Plaintiffs' only evidence of a conspiracy are their own inadmissible hearsay statements.

Finally, Plaintiffs' malicious prosecution claims cannot be sustained. The elements of a malicious prosecution claim are 1) malice in instituting or continuing the prosecution; 2) lack of probable cause; and 3) termination of the prosecution in favor of the accused. <u>Garza v. Clarion Hotels, Inc.</u>, 695 N.E.2d 811, 813 (Ohio Ct. App. 1997). A state court magistrate has already determined after a full hearing that there was probable cause to go to trial on all of the charges against the Plaintiffs. <u>See</u> Tr. (Nov. 19, 2001), at 64-65. Therefore, the issue of probable cause or lack thereof is res judicata and cannot be relitigated here. <u>Griffin v. Edison</u>, 22 Fed. Appx. 393, 395 (6th Cir. 2001). Second, there is no evidence of malice on the part of any of the Defendants in instituting or continuing the prosecution against the Plaintiffs. Indeed, as Defendant

Brunsman correctly points out, she was not the impetus for the prosecution. A phone call from an abuse counselor to the police initiated the investigation and prosecution of the Plaintiffs. Thus, Plaintiffs' malicious prosecution claims fail on at least the first two elements and Hughes' individual claim fails because there is no evidence that earlier proceedings were terminated in his favor.

At Plaintiffs' invitation, the Court has read the entire transcript of the juvenile court proceedings, but nothing in it supports their claims. To be sure, Brunsman did give some inconsistent or incomplete prior statements, but she was also duly impeached on this basis by Plaintiffs' trial counsel. In addition, there was testimony presented which supported Plaintiffs' version of the incident. Ultimately, however, the magistrate was required to decide the case based on her evaluation of the credibility of each side's witnesses. This was doubtlessly a difficult task. Nonetheless, the transcript contains no hint that the Defendants discriminated against Plaintiffs because of their race.

### Conclusion

In conclusion, Plaintiffs have not adduced any admissible evidence that any of the Defendants conspired against the Plaintiffs or violated their civil rights because of their race. Likewise, there is no evidence which supports Plaintiffs' state law malicious prosecution claims. Accordingly, each

Defendants' motion is well-taken and is **GRANTED**. Plaintiffs' claims are **DISMISSED WITH PREJUDICE.  THIS CASE IS CLOSED.**

       **IT IS SO ORDERED**

Date September 13, 2004               s/Sandra S. Beckwith
                                             Sandra S. Beckwith, Chief Judge
                                              United States District Court